526 A.2d 765

**Shrikant Nandan Prasad SINHA, Appellee,**

v.

**Chandra Prabha SINHA, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 28, 1987.

Decided May 28, 1987.

Pamela A. Falls, Basking Ridge, N.J., for appellant. James Flick, Media, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

OPINION OF THE COURT

HUTCHINSON, Justice.

Appellant, Chandra Prabha Sinha, appeals by allowance a Superior Court order 341 Pa.Super. 440, 491 A.2d 899, which affirmed a decree of divorce entered in the Court of Common Pleas of Delaware County. Appellant argues that a unilateral divorce under our Divorce Code of 1980 requires formulation of an intent to dissolve the marriage before the statute's three year separation requirement begins to run. We agree with appellant that the reconciliation goals of the Divorce Code will be furthered by requiring an independent showing of intent to end the marriage before commencement of the three year period. Because this record shows appellee formed his intent to terminate the marital bonds only fourteen months before his filing suit in Common Pleas, we reverse the order of Superior Court.

On March 11, 1974, appellant and appellee, Shrikant Nandan Prasad Sinha, were married pursuant to a Hindu marriage ritual in Patna, Bihar, India. Appellee came to America in August of 1976 to pursue a master's degree in city and regional planning at Rutgers University in New Jersey. Due to appellant's inability to obtain a visa, she was unable to join or visit her husband in the United States. The parties corresponded regularly and, as late as September 26, 1978, the husband professed his love for his wife. In August 1979, the appellee filed a complaint in New Jersey Superior Court seeking a divorce. This action was voluntarily dismissed subsequent to appellee's move to Media, Delaware County. Appellee then renewed his efforts to secure a divorce with the filing of a complaint in Delaware County Common Pleas on October 15, 1980. The complaint alleged that the parties had lived separate and apart for three years and that the marriage was irretrievably broken pursuant to 23 P.S. § 201(d) (Supp.1986), Act of April 2, 1980, P.L. 63, No. 26, § 101.

After hearings in November 1981 and March 1982, a general master concluded that Pennsylvania courts enjoyed

jurisdiction to resolve the matter,[1] that the parties had lived separate and apart for three years, and that the marriage was irretrievably broken. Delaware County Common Pleas then dismissed exceptions to the master's report and a decree in divorce was entered on November 10, 1982. Superior Court affirmed.

Appellee first revealed his intention to end the marriage with the filing of the New Jersey complaint in August, 1979. Pennsylvania's unilateral divorce provision, 23 P.S. § 201(d), requires that the parties live separate and apart for three years and that the marriage be irretrievably broken. Physical separation alone will not satisfy the requirements of the statute. The demands placed on marriage by modern society will often force a spouse to leave the marital abode for long periods of time. These separations should not be interpreted as an intent to terminate the marriage. Accordingly, § 201(d) of the Divorce Code requires an intent to terminate the marital relation independent of the physical separation mandated by the statute. As appellee's intent to dissolve the marriage clearly manifested itself only fourteen months before the filing of the Pennsylvania complaint, the three year requirement of § 201(d) has not been satisfied.

Prior to the adoption of the Divorce Code of 1980, Pennsylvania's divorce laws had remained essentially unchanged since 1785. *See generally* Teitelbaum, *The Pennsylvania Divorce Law*, Pa.Stat.Ann. tit. 23, commentary at 346 (Purdon 1955). The previous code required a showing that one of the parties to a marriage was at fault before a divorce would be granted. 23 P.S. § 10 (repealed 1980), Act of May 2, 1929, P.L. 1237, No. 430, § 10. The old requirement that

---

1. In so doing, he rejected appellant's defense of *forum non conveniens.* This objection to a court's proceeding with the cause of action is governed by the considerations set out in *Plum v. Tampax, Inc.,* 402 Pa. 616, 168 A.2d 315, *cert. denied* 368 U.S. 826, 82 S.Ct. 46, 7 L.Ed.2d 30 (1961), and is generally in the discretion of the trial court. However, at oral argument counsel for appellee stated that his client is no longer a resident of this Commonwealth. We are not in a position to determine what effect this would have had on the lower court's resolution of this case.

the plaintiff seeking divorce be "innocent and injured" and that the other spouse be at fault forced many couples to perjure themselves rather than remain in an intolerable marital situation. Gold-Bikin & Rounick, *The New Pennsylvania Divorce Code,* 25 Vill.L.Rev. 617, 619–20 (1980). Recognizing the difficulties inherent in a fault-only system, the legislature included in the new act a number of "no-fault" provisions. Section 201(b) allows for divorce where one party suffers from a mental disability resulting in confinement for three years. 23 P.S. § 201(b). A divorce may be granted where the marriage is irretrievably broken and both parties consent to the divorce. 23 P.S. § 201(c). A third provision, upon which appellee relied in the instant case, allows a court to grant a divorce where the parties have lived separate and apart for at least three years and upon a showing that the marriage is irretrievably broken. 23 P.S. § 201(d).[2]

Noting that the definitional section of the 1980 Divorce Code, 23 P.S. § 104, interprets "separate and apart" as the "[c]omplete cessation of any and all cohabitation," Superior Court affirmed Common Pleas' grant of a divorce to appellee based upon the parties' physical separation which commenced with appellee's departure for the United States in August 1976. This was error. Physical separation alone does not satisfy the separate and apart requirement of § 201(d). There must be an independent intent on the part of one of the parties to dissolve the marital union before the three year period commences. This intent must be clearly manifested and communicated to the other spouse. Any other interpretation would allow one

---

**2.** 23 P.S. § 201(d) states:

(d)(1) It shall be lawful for the court to grant a divorce where a party has filed a complaint and an affidavit alleging that the parties have lived separate and apart for a period of at least three years, and that the marriage is irretrievably broken, and:

(i) the respondent does not deny the allegations set forth in the affidavit; or

(ii) the respondent denies one or more of the allegations set forth in the affidavit, but after notice and hearing, the court determines that the parties have lived separate and apart for a period of at least three years and that the marriage is irretrievably broken.

spouse to depart the marital home for apparently benign. purposes, remain away for the statutory period, and then sue for a divorce. The granting of a divorce under such circumstances would deprive the unknowing party an opportunity to attempt reconciliation, a specific policy goal of the legislature. 23 P.S. § 102(a)(2). All too often the exigencies of modern life require a spouse to leave the marital home for extended periods. The demands of one's employment, education and military service may not be utilized to secure a divorce, absent an independent intent to dissolve the marriage.

The Virginia Supreme Court, faced with a similar set of facts, interpreted their unilateral divorce provision to require not only physical separation but also an independent intent to end the marriage. In *Hooker v. Hooker*, 215 Va. 415, 211 S.E.2d 34 (1975) (*per curiam*), Cecil M. Hooker went to South Vietnam as a civilian employee of the United States Army in August, 1970. During his absence, substantial sums of money were sent from Vietnam to Mrs. Hooker for the support and education of the family, mortgage payments and for the care of the Hookers' horses. In dismissing Mr. Hooker's complaint in divorce, a chancellor found no intent on the part of Mr. Hooker to terminate the marriage until September, 1972, when divorce proceedings were initiated. In affirming the trial court, the Virginia Supreme Court noted:

> We believe that the words "lived separate and apart" in Code § 20–91(9) mean more than mere physical separation. In our view the General Assembly intended that the separation be coupled with an intention on the part of at least one of the parties to live separate and apart permanently, and that this intention must be shown to have been present at the beginning of the uninterrupted two year period of living separate and apart without any cohabitation. Otherwise, many extended separations required by other circumstances could ripen to "instant divorce" without the salutory period of contemplation

required by the statute during which the parties have an opportunity for reconciliation.[3]

*Id.* at 417, 211 S.E.2d at 36. In the context of another separation engendered by military service, the Supreme Court of Louisiana opined:

Business and other necessities may require the husband to live in one place and the wife at another.... The separation intended by the statute is a separation by which the marital association is severed. It means the living asunder of the husband and wife. It is a voluntary act, and the separation must be with the intent of the married persons to live apart because of their mutual purpose to do so, or because one of the parties with or without the acquiescence of the other intends to discontinue the marital relationship.

*Otis v. Bahan,* 209 La. 1082, 1088, 26 So.2d 146, 148 (1946). Our research reveals many appellate decisions defining the "separate and apart" proviso of a unilateral divorce statute to require an intent to dissolve the marital union apart from mere physical separation.[4] The results reached by those

**3.** The Virginia Code then provided in pertinent part:
A divorce from the bond of matrimony may be decreed:

. . . . .

(9) On the application of either party if and when the husband and wife have lived separate and apart without any cohabitation and without interruption for two years.
Va.Code Ann. § 20–91 (Supp.1974). The current statute reduces the "separate and apart" requirement to one year. *See* Va.Code Ann. § 20–91 (Supp.1986).

**4.** *Mogensky v. Mogensky,* 212 Ark. 28, 204 S.W.2d 782 (1947) (separation occurring before husband entered Army evidences independent intent to end marriage); *Jordan v. Jordan,* 69 Idaho 513, 210 P.2d 934 (1949) (husband and wife not separate and apart pursuant to statute where absence made necessary by employment); *Byers v. Byers,* 222 N.C. 298, 22 S.E.2d 902 (1942) (separation must occur with intent of at least one of parties to cease cohabitation arising at beginning of separation period); *Dailey v. Dailey,* 11 Ohio App.3d 121, 463 N.E.2d 427 (1983) (where wife suffers stroke, enters hospital and does not return to home for over two years, parties not living separate and apart as separation must have been voluntary); *Niemann v. Niemann,* 282 S.C. 127, 317 S.E.2d 472 (S.C.Ct.App.1984) (where separation independent of military service divorce on grounds of separation proper). *See also Caye v. Caye,* 66 Nev. 78, 203 P.2d 1013 (1949) (one

courts are in accord with what we believe our legislature intended in precluding a unilateral no-fault divorce until after a three year separation.

Our holding today, that the "separate and apart" language of 23 P.S. § 201(d) requires both physical separation and a clear intent on the part of at least one of the parties to dissolve the marital ties at the beginning of the three year period, requires us to reverse Superior Court.[5] Appellee departed the marital home in August 1976 with the avowed purpose of obtaining a graduate degree. He filed a complaint in divorce in mid-August 1979 although, as late as September 26, 1978, he had professed his love for his wife in regular correspondence to her in India.[6] Even though the parties were physically separated, appellee's own hand traces the constraints of the marriage bond. Employment of the August 1976 departure date as the commencement of the three year period would deny the unknowing wife the opportunity for reconciliation contemplated by the Divorce Code. Appellee first manifested an intent to sever the marital bond with the filing of the New Jersey suit, only fourteen months prior to his filing of a complaint in divorce in Delaware County Common Pleas. As such, appellee has not lived separate and apart from his spouse for the three years required by § 201(d) of the Divorce Code.[7]

Accordingly, the judgment of Superior Court is reversed.

McDERMOTT, J., files a concurring opinion in which PAPADAKOS, J., joins.

does not live separate from his spouse by being called to duty in the armed forces or being called away on business); 24 Am.Jur.2d *Divorce and Separation* § 148 (1983); 27A C.J.S. *Divorce* § 20 (1986).

5. This does not mean that attempts at reconciliation or rehabilitation of the marriage will toll the three year period.

6. The closing of appellee's letter postmarked September 26, 1978 reads: "So love! as usual I expect your kind of love. Kisses, yours, Sinha." N.T., March 17, 1982, Vol. I, p. 25.

7. Because of our disposition of the above issue, we need not consider appellant's argument that appellee could not be a Pennsylvania domi-

McDERMOTT, Justice, concurring.

In order to file for divorce in Pennsylvania a party must be a *bona fide* resident. 23 P.S. § 302. *Bona fide* residence for purposes of divorce means actual residence coupled with domiciliary intent. See *Smith v. Smith*, 206 Pa.Super. 310, 213 A.2d 94 (1965). To prove domiciliary intent requires a showing of intent to live within a given jurisdiction "without any fixed or certain purpose to return to [a] former place of abode." *Estate of McKinley*, 461 Pa. 731, 734, 337 A.2d 851, 853 (1975).

Appellee in this case made a claim of residency, which was accepted by the courts below. However, those courts ignored what I believe was a legal impediment to that claim.

Mr. Sinha is not a citizen of the United States. His stay in this country is by the grace of the federal government, and the terms and conditions of that stay are determined by the Immigration and Naturalization Act.[1] Mr. Sinha entered this country on an F–1 student visa in 1976. Since that time Mr. Sinha has changed his classification to an H–1 worker status. In order to obtain such a status the Act requires Mr. Sinha, to maintain a permanent residence abroad "which he has no intention of abandoning". 8 U.S.C. § 1101(a)(15)(H). Nevertheless, he successfully argued below that his intentions changed and that at the time of his divorce action he intended to be a resident of Pennsylvania.

I believe it was error to even permit evidence of Mr. Sinha's convenient change of heart without prior evidence that he had first expressed his new found intention to the Immigration Bureau, and received approval to alter his status. Since Mr. Sinha was on record as being a *bona fide* resident of India, absent some proof of his denouncement of that status, he should not have been permitted to claim a

ciliary, for purposes of the Divorce Code, due to his immigrant visa status.

1. Act of June 27, 1952. P.L. No. 82–414.

new residence for the sole purpose of engaging the jurisdiction of the Pennsylvania courts.

I therefore concur in the result.

PAPADAKOS, J., joins in this concurring opinion.