J-S49042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JIAN LI ZHU | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| ZHAOJIN DAVID KE | |
| Appellant | No. 6 WDA 2017 |

Appeal from the Order December 13, 2016
In the Court of Common Pleas of Erie County
Civil Division at No(s): 10255-2013

BEFORE: DUBOW, SOLANO, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED OCTOBER 06, 2017**

Appellant, Zhaojin David Ke, appeals *pro se* from the order of the Erie

County Court of Common Pleas entering a final decree in divorce. Appellant

challenges the November 28, 2016 order of the court denying his exceptions

and affirming the report and recommendations of the master. We affirm.

The trial court summarized the procedural posture of this case as

follows:

> [Appellee]-wife Jian Li Zhu ("Zhu"), filed her Complaint
> in Divorce ("Complaint"), on January 31, 2013 requesting
> a 3301(c)[1] [mutual consent] divorce and equitable
> distribution. The complaint was later amended to add a
> count for a divorce under section 3301(d) [irretrievable
> breakdown]. The divorce Master, Mary Alfieri Richmond,
> Esquire ("Master"), was appointed in March of 2014.
> Master's hearings solely on the issue of date of separation

---

[*] Former Justice specially assigned to the Superior Court.

[1] 23 Pa.C.S. § 3301(c).

were held on June 16 and July 9, 2014. The report resulting from those hearings was filed November 3, 2014. The Master concluded that the date of separation coincided with the date the Complaint was served on [Appellant], that being February 22, 2013. [Appellant] filed exceptions to the Master's report on date of separation on November 24, 2014, which were dismissed by Memorandum Opinion and Order of the Honorable Stephanie Domitrovich on February 2, 2015. [Appellant] sought to appeal Judge Domitrovich's Order, but the appeal was denied as interlocutory.[2]

The Master's hearing on equitable distribution issues was held on May 25, 2016 ("Master's Hearing"). The Report and docket indicate that [Appellant] was served notice of the hearing, including notice of permission to attend the hearing by telephone,[fn1] by regular mail, certified mail, and personal service. There is no indication the regular mail was retuned. The certified mail was "unclaimed." The affidavit of personal service indicates that an adult male who refused to identify himself was served by hand delivery at [Appellant's] address on May 4, 2016 by a process server. In his Exceptions, [Appellant] admits having received notice of the hearing by email, which has been [Appellant's] preferred method of communication on procedural matters throughout these proceedings, so apparently it was sent to him via email as well. Also, the Master points out that [Appellant] must have received the hearing notice because he attached a copy of it to a pleading he filed with the Pennsylvania Supreme Court styled as mandamus action on May 16,

---

[2] *See Caplan v. Caplan*, 713 A.2d 674, 675 (Pa. Super. 1998) (granting motion to quash appeal based upon claim that "the order establishing the date of the marriage as part of a divorce action is interlocutory and not a final order under Pa.R.A.P. 341").

2016[3] (that action was denied by the Supreme Court on July 25, 2016).[4]

> [fn1] [Appellant] is allegedly disabled and lives in Philadelphia, Pennsylvania. He is routinely granted permission to attend court proceedings in Erie County by telephone.

> Nevertheless, [Appellant] did not attend the Master's Hearing on May 25th, or seek to continue or reschedule it. The two-hour hearing commenced after a delay of one-half hour to allow additional time for [Appellant] to call, and concluded upon presentation of testimony and evidence by [Appellee], who appeared, represented by counsel. Though [Appellant] disputes virtually every recommendation made by the Master in his 26-page Exceptions,[5] he does not raise the issue of improper notice, nor does he make any effort to explain his failure to appear at the Master's Hearing.

Trial Ct. Op., 11/28/16, at 1-2.

On October 7, 2016, a hearing was held on the exceptions filed by Appellant to the master's report and recommendation. Following the hearing on the exceptions, the trial court dismissed the exceptions and approved the Master's Report. *Id.* at 2. The trial court issued a decree in divorce on December 13, 2016. This timely appeal followed. Appellant filed a court-

---

[3] *See* Application for Extraordinary Relief in the Nature of Action in Mandamus and Prohibition, 5/16/16, at Ex. 31.

[4] The Pennsylvania Supreme Court entered a Per Curiam Order denying the Application for Extraordinary Relief. *Zhoajin David Ke, Pet'r v. Court of Common Pleas of Erie County, Resp't*, 59 WM 2016 Pa. 2016).

[5] We note the Master's report was filed on July 18, 2016, and served on July 28, 2016. Appellant was granted an extension of time to file exceptions until September 5, 2016. He filed his exceptions on September 2, 2016.

ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.[6]

The trial court's Pa.R.A.P. 1925(a) opinion incorporated its November 28, 2016 opinion.

Appellant raises the following issues for our review:

1. Whether the trial court abused its discretion by deliberately denying [Appellant] economic justice just because [Appellant] failed to attend the [M]aster's third hearing, as conceded by the trial court.

2. Whether it was logically and physically possible—when [Appellee] "resides in Erie County and [Appellant] has resided primarily in Philadelphia **since January 2008**"—for the parties to be "still acting as a marital unit by taking on **DAILY** activities synonymous with a healthy marital relationship," as the trial court fictitiously insisted in its 2/2/2015 "Memorandum Opinion" at 9 with respect to the parties' date of separation.

---

[6] Appellant raised forty-five allegations of error in his Rule 1925(b) statement and nine issues in his brief. We endorse the following:

With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to any of them. I do not say that this is an irrebuttable presumption, but it is a presumption nevertheless that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness.

*Andaloro v. Armstrong World Indus., Inc.*, 799 A.2d 71, 83-84 (Pa. Super. 2002) (citation omitted).

3. Whether the trial court abused its discretion by indiscriminately embracing the Rule 3301 definition of "date of separation" when there is sufficient evidence pointing to January 1, 2008[,] as the date of separation.

4. Whether the trial court abused its discretion by using multiple valuation dates for [Appellant] but a single valuation date for [Appellee] without providing a shred of justification.

5. Whether the trial court abused its discretion by excluding [Appellant's] probative evidence filed on the docket.

6. Whether the trial court abused its discretion by denying [Appellant] a de novo hearing on his Exceptions when he asked for it.

7. Whether the trial court abused its discretion by refusing to review all of the Exceptions item by item at the hearing on the Exceptions.

8. Whether there is any statute or caselaw providing that . . . Erie County is exempted from Pa.R.C.P. 1920.55-3 with respect to a hearing de novo on Exceptions before the trial court.

9. Whether the trial court abused its discretion by willfully depriving [Appellant] of his due process and equal protection rights in refusing to conduct a de novo hearing on asset distribution.

Appellant's Brief at 5.[7]

_____

[7] Although Appellant raises nine questions presented, the argument section of his brief is not divided accordingly and his analysis of each question is not clearly delineated, in contravention of Pennsylvania Rule of Appellate Procedure 2119(a). **See** Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued"); **see also Commonwealth v. Kane**, 10 A.3d 327 (Pa. Super. 2010). "The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authority. . . . [W]hen defects in a brief impede

We address issues two and three together because they are interrelated. Appellant contends "facts clearly point to January 1, 2008 as the clear-cut date of separation . . . ." *Id.* at 28. He claims the master erred in finding the date of separation to be the date the complaint in divorce was served. *Id.*[8]

Where the parties dispute the date of final separation, "[o]ur standard of review is one of an abuse of discretion. Absent an abuse of discretion, the trial court's findings of fact, if supported by credible evidence of record, are

---

our ability to conduct meaningful appellate review, we may . . . find certain issues to be waived." *Kane*, 10 A.3d at 331; *see PHH Mortg. Corp. v. Powell*, 100 A.3d 611, 615 (Pa. Super. 2014) (refusing to quash appeal despite numerous violations of appellate briefing rules). We decline to quash. *See id.*, 100 A.3d at 615.

> Although this Court is willing to liberally construe materials filed by a *pro se* litigant, *pro se* status confers no special benefit upon the appellant. To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing.

*In re Ullman*, 995 A.2d 1207, 1211-12 (Pa. Super. 2010) (citations omitted).

[8] In its opinion in response to Appellant's exceptions to the divorce Master's report regarding equitable distribution, the trial court dismissed the exception to the date of separation. The court opined: "Date of separation was previously litigated before the Master, and affirmed by trial court, therefore it is not subject to challenge here." Trial Ct. Op., 11/28/16, at 6. However, since the decree in divorce has been entered, the order establishing the date of separation is appealable. *See e.g.*, *Colagioia v. Colagioia*, 523 A.2d 1158, 1160 (Pa. Super. 1987) (holding "a pre-divorce order of equitable distribution is interlocutory and cannot be reviewed until rendered final by the entry of a divorce decree").

binding upon a reviewing court." ***Teodorski v. Teodorski***, 857 A.2d 194, 197 (Pa. Super. 2004).

In ***McCoy v. McCoy***, 888 A.2d 906 (Pa. Super. 2005), this Court opined:

> the date on which the parties begin living separate and apart, is established upon the filing and serving of a divorce complaint, unless an earlier date can be substantiated through the presentation of evidence confirming an earlier date. A presumption . . . is a procedural device which not only permits an inference of the 'presumed' fact, but also shifts to the opposing party the burden of producing evidence to disprove the presumed fact. Failure to meet this burden of production will normally result in [a decision] . . . in favor of the party invoking the presumption. In short, [t]he party attempting to rebut the presumption has the burden of proof.

***Id.*** at 912 (citations and quotation marks omitted).

Separate and apart is defined by statute as follows: "Cessation of cohabitation, whether living in the same residence or not. In the event a complaint in divorce is filed and served, it shall be presumed that the parties commenced to live separate and apart not later than the date that the complaint was served." 23 Pa.C.S. § 3103. Furthermore,

> "[t]here must be an independent intent on the part of one of the parties to dissolve the marital union" and "the intent must be clearly manifested and communicated to the other spouse." ***Sinha v. Sinha***, [ ] 526 A.2d 765[, 767] ([Pa.] 1987).

***McCoy***, 888 A.2d at 910. In ***McCoy***, this Court concluded:

> Here, Husband, as the party with the burden of proof because he opposes the presumed fact, needed to prove

- 7 -

that either he or Wife had the "independent intent . . . to dissolve the marital union" and that the intent was "clearly manifested and communicated to the other spouse." ***Sinha***, 526 A.2d at 767. Although both the master and the trial court found that the marriage had not been a particularly good one, neither found evidence that would support a finding that an intent to dissolve the marriage had been communicated by one spouse to the other prior to the filing of the divorce complaint by Wife. Following our review of the record, we must agree. Accordingly, we conclude that Husband has failed to carry this burden of proof that the parties' separation occurred prior to the date Wife filed and served the divorce complaint. Husband has not rebutted the presumption.

***Id.*** at 912 (footnote omitted).

Instantly, the trial court opined:

After review of testimony and evidence received by the Master at the two Master's Hearings held June 16th and July 9th 2014, . . . this [court] finds [Appellant's] Exceptions regarding the parties' date of separation are without merit. The testimony and evidence submitted by [Appellee] at both Master's hearings contradicted [Appellant's] allegations of an unhappy marital relationship. [Appellee] produced several photographs . . . of herself and [Appellant] in seemingly good company from 2005 to 2011, including the parties together in their garden, sharing a meal at their kitchen table, together with their son at Presque Isle State Park, kayaking together, working on [Appellant's] federal discrimination lawsuit against Edinboro University together, and leaving St. Vincent's Hospital together after [Appellant's] surgery. Although [Appellant] claims those photographs are not indicative of a happy marital relationship and are simply the parties "putting on the appearance of a married family unit," others outside of the parties' family unit could easily conclude the parties were in a happy marital relationship.

In addition, at the time [Appellant] was filing and preparing his two lawsuits—one for medical malpractice against several medical providers in August of 2007 and one for discrimination against Edinboro University in

September 2008—he listed [Appellee] as his wife (for a loss of consortium claim in the medical malpractice lawsuit) and listed 533 Indiana Drive, Erie, Pennsylvania 16505 as his address. Also, during his discrimination lawsuit against Edinboro University, [Appellee] frequently accompanied [Appellant] to trial and was introduced by him as his wife. [Appellant] even admitted signing Verifications in his lawsuits affirming he and [Appellee] were still married. As [Appellant's] discrimination lawsuit was in September 2008, eight (8) months after [Appellant] claimed he "clearly lived separate and apart from [Appellee,]" this evidence again contradicted [Appellant's] allegations of an unhappy marital relationship and is in opposition to [Appellant's] contention that the parties' date of separation was January 1st, 2008.

\*   \*   \*

Finally, there is substantial testimony indicating the parties never seriously discussed a divorce until [Appellee] filed her Complaint for divorce on February 1st, 2013.

\*   \*   \*

Therefore, while [Appellant], by and through his actions after moving to Philadelphia in 2008, may have had an independent intent to dissolve the marital union, the fact the parties never seriously discussed divorce until [Appellee] filed her Complaint for Divorce undoubtedly shows [Appellant's] intent was not clearly manifested and communicated to [Appellee].

Trial Ct. Op., 2/2/15, at 7-10 (citations omitted).

The trial court found "the Master properly concluded the parties' date of separation was February 22nd, 2013, which is the date [Appellant] was served with [Appellee's] Complaint for Divorce, as this conclusion was pursuant to statutory and case law and supported by the testimony and evidence on the record." *Id.* at 10. We agree no relief is due.

In the case *sub judice*, Appellant testified on cross-examination, *inter alia*, as follows at the first Master's hearing on the issue of the date of separation:

> Q: . . . After you claim that you were maritally separated and your marriage was over, you're doing yard work [at 533 Indiana Drive] and staying there for a while, even though you're trying to tell us that you made it clear to [Appellee] that you were no longer married? Are you saying that that happened?
>
> A. I never said marriage was over. Okay.
>
> Q. You never said—
>
> A. I said we stopped cohabitation December 31, 2003. I never say we were like [sic] no longer married or whatever.

N.T., 6/16/14, at 73.

At the second Master's hearing in relation to the date of separation, Appellant testified as follows, reproduced verbatim:

> [Master:] Mr. Ke, let me back up a little so that I'm clear on one point. [Appellee] testified that the night before she left Philadelphia in May of 2012 that you and she had a discussion about divorce.
>
> A: Yeah.
>
> Q: It's my understanding that your testimony is that discussion never took place, correct?
>
> A: That's right.
>
> Q: And it's my understanding from your testimony that you and your wife did have that type of discussion in February of 2013; is that correct?

- 10 -

A: No.  I will not say discussion, because she had file a divorce complaint already.  She wanted  settle with me peacefully.  She said, I live here.  I would like to have] house.  I said, okay.  Go ahead  have house.  That was [sic] kind of discussion I was talking about.  Not discussion about whether we should stay in the marriage, we should divorce each other.  Not anything like that.

Q: And that type of—that discussion took place after she filed the divorce complaint?

A: Yeah.  After.  Because divorce was filed on February 1st.

Q: Of 2013?

A: Yeah.  After that—after that, I think, we—I don't remember if I e-mail her first or she e-mail me first.

Q: And that's when the two of you—

A: I can find out easily.  I can find out easily.

Q: No, that's all right.  My understanding from what you're testifying to is that that discussion about the mechanics of the divorce were first—

A. Not about divorce.  I already—I file answer,[9] you know.  In the same month I said, I agree to divorce 100 percent.

N.T., 7/9/14, 231-32.

Following our review of the record, the evidence does not support a finding that an intent to dissolve the marriage had been communicated by Appellant to Appellee prior to the filing of the complaint in divorce. **See** **McCoy**, 888 A.2d at 910, 912.  Appellant had the burden of proof and has

---

[9] Appellant filed his answer to the complaint in divorce on March 18, 2013.

- 11 -

not rebutted the presumption that the serving of the complaint in divorce established the date on which they began living separate and apart. *See id.* at 912. We find no abuse of discretion by the trial court. *See Teodorski*, 857 A.2d at 197. Accordingly, there is no merit to Appellant's claim that January 1, 2008, was the date of separation.

We address the remaining issues together because they are interrelated. Appellant claims that the trial court "erred by not giving [him] a hearing *de novo* on his Exceptions." Appellant's Brief at 35.[10] Appellant avers the court "erred by excluding [his] admissible evidence and admitting [Appellee's] false testimony, proven so in [Appellant's] Exceptions . . . ." *Id.* at 36. He maintains the court erred in holding it was "limited to the evidence presented before the Master." *Id.* at 41. Appellant contends he was entitled to a *de novo* hearing pursuant to Pa.R.C.P. 1920.55-3. *Id.* at 40, 42. Appellant claims he was deprived of economic justice. *Id.* at 45, 47.

---

[10] We note that Appellant mischaracterizes footnote two of the trial court opinion. The court stated as follows:

> The Pennsylvania Rules of Civil Procedure provide alternative hearing procedures for matters referred to Masters. Pa.R.C.P. 1920.55-3 contemplates *de novo* review at the trial court level if exceptions are filed. Pa.R.C.P. 1920.55-2, **which is adopted in Erie County**, calls for a hearing on the record at the Master's level, and argument only on any exception before the trial court. *See*: Official note to Pa.R.C.P. 1920.55-1.

Trial Ct. Op., 11/28/16, at 3 n.2 (emphasis added).

Our review is governed by the following principles: "The interpretation and application of a Pennsylvania Rule of Civil Procedure presents a question of law. Accordingly, to the extent that we are required to interpret a rule of civil procedure, our standard of review is *de novo*, and our scope of review is plenary." **Keller v. Mey**, 67 A.3d 1, 5 (Pa. Super. 2013) (citation omitted).

Pennsylvania Rule of Civil Procedure 1920.55-1 provides as follows:

> (a) Matters referred to a master for hearing shall proceed as prescribed by Pa.R.C.P. No. 1920.55-2 unless the court by local rule adopts the alternative procedure of Pa.R.C.P. No. 1920.55-3.
>
> (b) The president judge or the administrative judge of Family Division of each county shall certify that all divorce proceedings which are referred to a master in that county are conducted in accordance with either Pa.R.C.P. No. 1920.55-2 or Pa.R.C.P. No. 1920.55-3. The certification shall be filed with the Domestic Relations Procedural Rules Committee . . . .

Pa.R.C.P. No. 1920.55-1. The explanatory comment to the rule provides:

> The 1995 amendments created alternative procedures for appeal from the recommendation of a master in divorce. Pa.R.C.P. No. 1920.55-1 states that, if the court chooses to appoint a master, the exceptions procedure set forth in proposed Pa.R.C.P. No. 1920.55-2 will be used unless the court has, by local rule, adopted the alternative procedure of proposed Pa.R.C.P. No. 1920.55-3.[11]

---

[11] Rule 1920.55-3 provides:

> (a) No record shall be made of the hearing in proceedings held pursuant to this rule.
>
> (b) After the conclusion of hearing, the master shall:
>
> (1) file the report within;

In lieu of continuing the practice of including in the Note a 67-county list identifying the hearing procedure selected by the local county court, the list can now be found on the Domestic Relations Procedural Rules Committee website.

Pa.R.C.P. 1920.55-1, Cmt.

Rule 1920.55-2, adopted in Erie County, provides as follows:

(a) After conclusion of the hearing, the master shall:

(1) file the record and the report within;

(i) twenty days in uncontested actions or;

_____

(i) twenty days in uncontested actions or;

(ii) thirty days in contested actions; and

(2) immediately serve upon counsel for each party, or, if unrepresented, upon the party, a copy of the report and recommendation, and written notice of the right to demand a hearing de novo.

(c) Within twenty days of the date the master's report is mailed or received, whichever occurs first, any party may file a written demand for a hearing de novo.  If a demand is filed, the court shall hold a hearing de novo and enter a final decree.

(d) If no demand for de novo hearing is filed within the twenty-day period, the court shall review the report and recommendation and, if approved, shall enter a final decree.

(e) No Motion for Post-Trial Relief may be filed to the final decree.

Pa.R.C.P. 1920.55-3.

> (ii) thirty days from the last to occur of the receipt of the transcript by the master or close of the record in contested actions; and

> (2) immediately serve upon counsel for each party, or, if unrepresented, upon the party, a copy of the report and recommendation and written notice of the right to file exceptions.

> (b) Within twenty days of the date of receipt or the date of mailing of the master's report and recommendation, whichever occurs first, any party may file exceptions to the report or any part thereof, to rulings on objections to evidence, to statements or findings of fact, to conclusions of law, or to any other matters occurring during the hearing. Each exception shall set forth a separate objection precisely and without discussion. Matters not covered by exceptions are deemed waived unless, prior to entry of the final decree, leave is granted to file exceptions raising those matters.

> (c) If exceptions are filed, any other party may file exceptions within twenty days of the date of service of the original exceptions. The court shall hear argument on the exceptions and enter a final decree.

> (d) If no exceptions are filed, the court shall review the report and, if approved, shall enter a final decree.

> (e) No Motion for Post-Trial Relief may be filed to the final decree.

Pa.R.C.P. 1920.55-2. "[I]n counties in which no new hearing is held before the trial court, **the trial court is limited to the evidence presented before the master**." *Cunningham v. Cunningham*, 548 A.2d 611, 613 (Pa. Super. 1988) (emphasis added).

Instantly, the trial court opined:

> The respective roles of the Master and the trial court under Rule 1920.55-2, are for the Master to create the

evidentiary record and make recommendations, and for the trial court to review the Master's recommendations and hear argument on any exceptions to same.

\* \* \*

In light of this [c]ourt's standard of review, [Appellant's] failure to appear at the Master's Hearing presents an insurmountable challenge to his Exceptions, which are based largely, if not exclusively, on a written narrative of facts and sixty-three exhibits submitted for the first time with his Exceptions. The narrative and exhibits were not offered or admitted at the time of the Master's hearing and are not properly the part of the Masters record under review.

Trial Ct. Op., 11/28/16, at 3.

In the case *sub judice*, the complaint for divorce was filed in Erie County. Therefore, the procedures set forth in Rule 1920.55-2 were applicable. Consequently, Appellant was not entitled to a *de novo* hearing on his exceptions to the Master's report. **See** Pa.R.C.P. 1920.55-2(c); **see also Cunningham**, 548 A.2d at 613. The trial court was limited to the evidence presented to the Master.[12] **See id.** We discern no error of law by the trial court. **See Keller**, 67 A.3d at 5. Accordingly, we affirm the order of the trial court.

Order affirmed. Motion for Leave to File Addendum denied.[13]

---

[12] Given our resolution of this issue, we need not address any other claims raised by Appellant.

[13] Appellant asks this Court to determine whether the Master abused her discretion in the rate she charged for the third Master's hearing.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  10/6/2017